# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA SMITH,<br><br>      **Plaintiff,**<br><br>v.<br><br>HILLSIDE VILLAGE,<br><br>      **Defendant.** | Civ. No. 17-0883 (KM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

  The defendant, Hillside Village, filed two state court actions against its elderly, disabled tenant, Sandra Smith: one for damages, and one to evict her. It lost both, and the State appellate court stated that it "expected" Hillside to repair the apartment and restore her tenancy "promptly." Hillside has not done so. Now, the tenant sues under federal law to restore her tenancy, and for damages. Because Ms. Smith did not have a full and fair opportunity to litigate her federal claims in the prior actions, and because the equities do not entitle Hillside to repose, its motion to dismiss the tenant's federal court complaint on *res judicata* grounds is denied.

1

## I. Background[1]

Ms. Smith, 78 years old at the time of the events in suit, occupied a rent-controlled apartment in Hillside's building for some 51 years.[2] She lived alone, and in her later years developed a psychological disorder that caused her to hoard materials, resulting in severe clutter. In addition, structural damage to the apartment contributed to the municipal authorities' declaring it to be unsanitary and uninhabitable.

Hillside immediately filed an action under the wrong statute, New Jersey's Unlawful Detainer Act (the Detainer Matter), seeking eviction and possession on three days' notice. Procedural confusion ensued. The judge, improvising, directed Hillside to file a landlord-tenant action (the LT Matter), a summary proceeding, in which possession issues would be heard; he kept the Detainer Matter open for the purpose of later hearing Hillside's claims for damages. Both cases were tried. Ultimately, Hillside lost both. The Detainer action failed at trial on the merits. On appeal from the LT action, the Appellate Division reversed the judgment of possession in Hillside's favor and stated that it "expected" Hillside would repair the apartment and restore Smith's tenancy "promptly."

Hillside did not repair the apartment or restore Smith's tenancy. Shortly after the Appellate Division affirmance, Smith filed this federal court action,

---

[1] Certain items submitted and properly considered on this motion to dismiss are cited as follows:

| | |
|---|---|
| Notice to Quit | = 3 Day Notice to Quit dated 7/20/2015, ECF no. 5-2 at 6 |
| Detainer Cplt. | = Complaint in the Detainer Matter, ECF no. 5-2 at 67 |
| Detainer Tr. | = Transcript of Hearing, 7/24/2015 in Detainer Matter, ECF no. 7-1 at 3 |
| LT Cplt. | = Complaint in the LT Matter, ECF no. 5-2 at 2 |
| LT Judgment. | = Judgment in the LT Matter, ECF no. 5-2 at 96 |

[2] Although the parties do not discuss it, it is perhaps not irrelevant that the unit is rent-controlled.

seeking possession of the premises. This action, under the Fair Housing Act Amendments, is based on Hillside's refusal to accede to Smith's August 2015 proposal for a reasonable accommodation of her disability, consisting of mental health treatment and an agreement for monitoring of her apartment by an outside agency.

Hillside now invokes equity, in the form of *res judicata*. This court, it says, must save it from Ms. Smith's vexatious assertion of claims she should have pursued earlier. Although the summary LT Action for possession would not have permitted counterclaims, Hillside says, leave to bring a counterclaim for possession could have been sought in Hillside's unsuccessful Detainer action for damages.

### A.  The Detainer Matter, DC-10607-15:  Phase 1

Prior to this federal litigation, on July 24, 2015, Hillside filed in Special Civil Part, Bergen County, an action (the "Detainer Matter") against Smith by Order to Show Cause. (*Hillside Village v. Sandra Smith*, Docket no. DC-10607-15 (N.J. Super. Ct., Law Div., Special Civil Part, Bergen Co.))

The complaint in the Detainer Matter alleged that on July 17, 2015, an officer of the Ridgefield Bureau of Fire Prevention went to inspect the apartment after receiving a report of an odor of gas. Inspectors, code enforcement officials, inspectors, and representatives of Hillside found appalling conditions within. The complaint cites destruction of the kitchen cabinets, holes in the ceiling, and likely insect and rodent infestation. The inspectors "red-tagged" the apartment as unfit for occupancy, and issued a letter and order to correct to Hillside.

Ms. Smith was removed from the premises. Hillside had counsel serve on Ms. Smith a 3-day Notice to Quit with demand for possession.

The Detainer Matter complaint sought a judgment of possession of Smith's apartment pursuant to New Jersey's Unlawful Detainer statute, N.J.

Stat. Ann. § 2A:39-1 *et seq.*, and an injunction against Smith's returning to the apartment except to recover personal property. (*See* Detainer Cplt., *passim*.)

On July 24, 2015, both parties, by counsel, appeared before the Hon. Joseph R. Rosa, Jr., J.S.C. on an order to show cause in the Detainer Matter. Ms. Smith's counsel argued, and Judge Rosa agreed, that an action under the Unlawful Detainer statute was not an appropriate shortcut; Smith, as a longtime tenant, was entitled to the protections of the anti-eviction provisions of New Jersey law.

What was required, Judge Rosa said, was a landlord/tenant action citing statutory grounds for eviction. (*See* Detainer Tr. 5:4–10, 8:18–9:1) He told Hillside's counsel he would have to file an eviction complaint. (*Id.* 12:25–13:18) Counsel for Hillside agreed to "go downstairs and file this as an LT" (landlord/tenant) action, based on the existing Notice to Quit. (*Id.* 13:19–21)

Counsel for Hillside expressed concern that such an LT proceeding would take too long. Judge Rosa reassured him that he had no vacation plans for August and that "I'll just put this on the DC calendar because it'll wind up being moved by the time – we can have the tenancy done a long time before this [*i.e.*, the Detainer Matter] comes up." (Detainer Tr. 12:23–13:3) Judge Rosa thus predicted that "you'll have [Smith] evicted and locked out even though she's out already" in the LT Matter, before Smith was even required to file an answer in the Detainer Matter. (*Id.* 16:8–12; 15:16–18)

Judge Rosa's statement that Smith was "out already" seemingly referred to the fact that the municipal officials had "red-tagged" the unit as unfit for habitation and removed her. The Judge stated that he would not let Ms. Smith reenter the apartment while it was in that condition. Counsel for Smith acknowledged that she was not immediately seeking such relief. (Detainer Tr. 14:3–7)

Judge Rosa volunteered further that "if I were the landlord, I would be in no rush to clean that up. If [the municipal authorities have] already said we'll

4

give you another 30 days, why in the world would you want to clean it up and then just have her try to come back in?" (Detainer Tr. 14:8–14) Counsel for Hillside stated that although the municipality could fine his client for unsanitary conditions, it was not his client's "responsibility to clean the tenant's apartment." (*Id.* 14:17–18, 24–25)

Judge Rosa and counsel, all talking over each other, seemingly came to share an understanding that the Detainer Matter would stay open so that Hillside's claim for "money damages" could be adjudicated.[3] Counsel for Ms.

---

[3] This three-way interaction is difficult to describe. (*See* Detainer Tr. pp. 12–16.) The following principles may help clarify the legal background:

> New Jersey is an anti-eviction jurisdiction. *See N.J.S.A.* 2A:18-61.1 to -61.12, the Anti-Eviction Act (Act). As such, under the Act, no residential tenant may be removed from a premises unless the removal is for one of the statutory causes set forth under the Act, *N.J.S.A.* 2A:18-61.1(a)-(q). [The opinion here cites non-payment of rent under § 2A:18-61.1(a). The basis cited in the LT action against Smith was § 2A:18-61-1(c) (willfully or by gross negligence causing damage to premises)]
>
> . . . . The sole purpose of a summary action instituted by the landlord to recover possession of leased premises is to enable the landlord to obtain speedy recovery of the premises. *West, supra,* 69 *N.J.* at 300, 354 A.2d 65; *Vineland Shopping Ctr., Inc. v. De Marco,* 35 *N.J.* 459, 462, 173 A.2d 270 (1961). A judgment of possession enables the landlord to legally enter the property. In the absence of the judgment of possession, a landlord is prohibited from taking possession of residential premises. *See Levin v. Lynn,* 310 *N.J.Super.* 177, 183, 708 A.2d 454 (App.Div.1998). Possession of the premises is the only available remedy for nonpayment of rent, because money damages may not be awarded in a summary dispossess action. *Hous. Auth. of Morristown v. Little,* 136 *N.J.* 274, 280 (1994).
>
> However, neither a landlord nor tenant are precluded from seeking to recover money damages in a subsequent proceeding. *Moyano v. Williams,* 267 *N.J.Super.* 213, 216, 630 A.2d 1212 (Law Div.1993). *See Azar v. Jabra,* 167 *N.J.Super.* 543, 552, 401 A.2d 293 (Law Div.1979) (holding a "summary dispossession action is not conclusive or binding as between the parties in subsequent litigation"); *see also Berzito v. Gambino,* 63 *N.J.* 460, 469, 308 A.2d 17 (1973) (holding tenants were not precluded from seeking to recover rent paid prior to court's ruling in summary dispossession action that landlord had breached the warranty of habitability). *N.J.S.A.* 2A:18-59.

*147 Broadway Corp. v. Robinson,* No. A-6483-06T1, 2008 WL 2663751, at *2 (N.J. Super. Ct. App. Div. July 9, 2008).

Smith stated that the Detainer Matter should be dismissed outright. She noted, correctly, that there was currently no such claim for damages even alleged in the Detainer Complaint. (Detainer Tr. 15:23–25; see Detainer Cplt., *passim*.)

Judge Rosa declined to sign Hillside's order to show cause for emergent relief in the Detainer Matter. He found no irreparable harm and stated that the issue of the tenancy could be settled in the LT Matter. (*See id.* 16:15–17:5)

### B. The State LT Matter, DC-5606-15

Hillside filed a handwritten complaint in the LT Matter the same day, July 24, 2015. (*Hillside Village v. Sandra Smith*, Docket no. DC-5606-15 (N.J. Super. Ct., Law Div., Special Civil Part, Bergen Co.) As statutory grounds for removal, the Complaint cited N.J. Stat. Ann. § 2A:18-61-1(c) ("The person has willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises."). It incorporated by reference the earlier Notice to Quit and sought a judgment of possession. (LT Cplt. ¶ 10) An eviction action, it did not seek back rent or damages. It alleged that Ms. Smith had willfully damaged the apartment and had failed to vacate it as required by the Notice to Quit.[4] Trial was scheduled for August 6, 2015.

Hillside attaches an August 4, 2015, letter from Smith's counsel in advance of the LT trial requesting an "interactive dialogue for reasonable accommodation under the Fair Housing Amendments Act of 1988, 42 U.S.C. 3601, et seq. (hereafter: FHAA), to enable Mrs. Smith to comply with her lease, in view of her obsessive compulsive/hoarding disorder." (Cplt. Ex. F, ECF no. 5-2 at 83) The letter cited the landlord's duty under FHAA to accommodate the needs of disabled persons and make reasonable accommodations before terminating a tenancy. (*Id.*) Hillside's counsel emailed that he would discuss it

---

[4] In her subsequently filed Answer, Smith admitted the hoarding but stated that any damage to the apartment resulted from the landlord's failure to remedy a termite infestation and water infiltration. (ECF no. 5-2 at 88) She ultimately prevailed at trial.

6

at the courthouse, but that Smith should be prepared to try the case if an accommodation could not be reached. (*Id.* at 84)

The LT Matter was tried before Judge Rosa on August 6 and 18, 2015. (ECF no. 5-2 at 20) Smith attempted to raise the FHAA, 42 U.S.C. §§ 3601–19 (at least as a defense if not as a claim), but was not permitted to do so in this summary action. (*Id.* at 21; *see Hillside Village v. Smith*, 2017 WL 412803 at *6 n.3 (Jan. 31, 2017).)[5]

Judge Rosa announced his decision on August 28, 2015, and on September 2, 2015, entered judgment in favor of Hillside on the claim that Smith had willfully or by gross negligence damaged the apartment. (LT Judgment, as amended, ECF no. 5-2 at 97) Hillside was granted possession of the premises.

Smith appealed to the New Jersey Superior Court, Appellate Division. (Notice of Appeal, ECF no. 5-2 at 99) To look ahead a bit, the Appellate Division ultimately reversed the LT Judgment. *See* Section I.D, *infra*.

### C. The Detainer Matter-Phase 2

The Detainer Matter, as noted above, was left open so that Hillside could pursue its claim for damages. The record of what happened next in the Detainer Matter, at least as presented by the parties, is sparse. In particular, the papers seem to lack a copy of the judgment in the Detainer Matter—the very judgment on which Hillside relies to foreclose the current action.

This much can be gathered. In the Detainer Matter, Hillside pursued a claim for damages based on damage to the apartment during Ms. Smith's

---

[5] On appeal, the Appellate Division noted that the trial judge had "observed that defendant was 'someone . . . in need of help,'" but had "rejected defendant's claim that she was entitled to an accommodation under federal law because a summary dispossession action did not provide for the expert testimony that would be necessary to establish her entitlement to such accommodations and none was offered in this case." *Hillside Village v. Smith*, 2017 WL 412803 at *6 n.3. (Jan. 31, 2017). The Appellate Division reversed on other grounds without reaching that issue, but I take notice of its account of the procedural history of the case.

7

tenancy. After a two-day trial concluding on January 6, 2016, the Hon. James X. Sattely, J.S.C., dismissed Hillside's case for failure of proof. (*See* Decision of Judge Sattely regarding attorneys' fees, dated Jan. 28, 2016, ECF no. 7-2 at 3)

### D. Appeal of the LT Matter

As noted above, Ms. Smith appealed from the judgment of eviction in the LT Matter. The Appellate Division reversed Judge Rosa's judgment awarding possession to Hillside. *Hillside Village v. Smith*, 2017 WL 412803 (Jan. 31, 2017) (Copy of decision, ECF no. 5-2 at 61).

The Notice to Quit, the Appellate Division held, was defective, and did not create jurisdiction in the trial court. The Notice cited hoarding and unsanitary conditions, but did not specify any damage that Smith had caused to the apartment. In particular, it did not specify the damage—structural damage, broken faucets, collapsed cabinets, and so on—to which the witnesses testified at trial.[6] Nor did the trial court make the necessary findings that the damage resulted from Ms. Smith's willful or grossly negligent conduct. 2017 WL 412803 at *6.

The Appellate Division vacated the judgment of possession and remanded for entry of an order dismissing the LT Complaint with prejudice. The court noted that Hillside had left the apartment vacant and had not performed any repairs for more than a year. It stated that "[s]ince the judgment of possession has now been vacated, we expect that [Hillside] will promptly make the necessary repairs and restore [Smith] to possession of the apartment." 2017 WL 412803 at *6 n.7. That allegedly has not occurred, "promptly" or otherwise.

---

[6] The lapse is perhaps explained by counsel's initial filing of the action under the Unlawful Detainer statute, without reference to the statutory grounds for eviction in N.J. Stat. Ann. § 2A:18-61-1. Hillside's hastily-contrived LT complaint cited those statutory grounds. But instead of restarting the process with a new Notice to Quit, counsel repurposed the original Notice to Quit. (*See* Detainer Tr. 13:6–15). That original Notice evidently had not been drafted with the statutory grounds for eviction in mind.

8

### E. The Complaint in this Federal Action

On February 9, 2017, Ms. Smith filed the complaint in this federal action. It asserts claims under the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3613(c), and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-4 *et seq*. The allegations of this federal-court complaint are as follows.

Ms. Smith, 78 years old, moved into her rent-controlled apartment at Hillside Village 51 years ago. At some time, she became depressed and developed hoarding disorder, a recognized mental disorder. As a result her apartment became extremely cluttered.

On July 17, 2015, she permitted emergency personnel to enter her apartment. She was told that someone had reported the odor of gas. The source was found to be her clothes dryer.

The emergency personnel noted the hoarding conditions, as well as structural problems such as a hole in the bathroom ceiling, damage to the floors, and plumbing issues. The official issued a notice of code violations and a notice that the apartment could not be occupied until the conditions were remedied. Smith alleges that she did remove her possessions, both to alleviate the hoarding and to permit repairs. Since then she has resided elsewhere, but apparently has no permanent home of her own.

On July 20, 2015, Hillside issued a three-day Notice to Quit. The Notice cited the hoarding and failure to perform basic housekeeping activities, but not the structural defects.

In connection with subsequent state-court eviction proceedings (the "LT Matter"), Ms. Smith's counsel presented Hillside with a proposed plan of action. Smith would agree to attend counseling, would take medication to address her psychological condition, and would arrange for monitoring of her apartment by a support organization. She requested that Hillside permit her to resume

9

occupancy of her apartment under those conditions.[7] Hillside declined to accept Smith's proposal for a reasonable accommodation and did not permit her to reoccupy the apartment.

The trial court ordered Smith's eviction. The Appellate Division reversed the decision of the trial court, but Ms. Smith still has not been restored to occupancy.

The federal court complaint seeks an order compelling Hillside to repair the apartment and restore Ms. Smith to possession, as well as damages.

## II. Standard on a Motion to Dismiss

Defendants have moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at

---

[7] Smith alleges that she specifically directed Hillside to a May 17, 2004 Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Accommodations Under the Fair Housing Act.

10

570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In support of its *res judicata* claim, Hillside submitted 100 pages of exhibits. Smith has responded with a smaller number of exhibits, for the most part records of the prior court proceedings. Neither side has objected to the other's reliance on such exhibits. Particularly relevant here are papers filed in the State Action and decisions of the State courts. These are cited to establish the nature and scope of prior proceedings between the parties, and the rulings of the state courts. Such records are subject to judicial notice. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.[8]

*Res judicata*, an affirmative defense, often raises issues of fact, but in a proper case may be cognizable on a motion to dismiss:

> We held in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a

---

[8] Even setting aside judicial notice, certain records that are the basis of the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Indeed, where a complaint is based on particular documents, a defendant may submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view. *Burlington*, 114 F.3d at 1426. Certain of the documents cited and expressly or impliedly relied on in the federal court complaint would fit within this exception as well.

11

dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.

*Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Thus *res judicata* may be considered on a Rule 12(b)(6) motion, where, as here, the necessary facts are "apparent on the face of the face of the complaint" and other documents properly considered on a motion to dismiss.

### III. Analysis

Hillside, citing the prior judgment in the State Detainer Matter (not the LT Matter), asserts that the claims in this federal action are barred by *res judicata,* and in particular, New Jersey's entire controversy rule. I cannot agree. The motion to dismiss on entire controversy grounds will be denied.

#### 1. *Res judicata* and the New Jersey entire controversy rule

The preclusive effect of a state court judgment in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980). Under New Jersey law, claim preclusion in the traditional sense tends to be subsumed by the broader "entire controversy" rule. The entire controversy rule precludes, not just claims actually decided by a prior judgment, but all claims and parties that a party could have joined in a prior case based on the same transaction or occurrence.

The entire controversy rule rests on considerations of both fairness and efficiency:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material

12

interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). [9]

The entire controversy doctrine "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 289, 662 A.2d 509, 513 (1995)).[10] *See also* Sylvia B. Pressler & Peter G. Verniero, N.J. Ct. R. 4:30A, Comment 1 (2017 ed., annot.)

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797

---

[9] Hillside at one point seems to demur; Ms. Smith, it says, is mixing up joinder rules with the entire controversy doctrine, which requires *only* (1) that the claims arise from the same transactions as the prior action (2) that the plaintiff did not raise them in the prior action. (Def. Reply 3) I disagree; many additional equitable considerations go into the court's decision, and the joinder rules have much to do with whether a claim could have been asserted in a prior action. Indeed, the entire controversy rule may be seen as the implementation of a particularly strong version of mandatory joinder of claims. *See, e.g.*, N.J. Ct. R. 4:30A (current ver.) ("Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine....").

[10] *Circle Chevrolet* was later overruled to the extent that attorney malpractice claims, because they are not to be brought in the action in which the malpractice occurred, were exempted from the entire controversy doctrine. *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997)

13

(N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

There is no requirement that the claim as to which preclusion is sought have been actually asserted in the prior action. Rather, the necessary relation between the prior action and the present one is a factual, transactional one:

> In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." [citing *DiTrolio v. Antiles*, 142 N.J. 253, 268, 662 A.2d 494 (1995)]. " 'It is the core set of facts that provides the link between distinct claims against the same parties ... and triggers the requirement that they be determined in one proceeding.' " *Id.* at 267–68, 662 A.2d 494. There is no requirement that there be a "commonality of legal issues." *Id.* at 271, 662 A.2d 494.

*Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605, 110 A.3d 19, 27 (2015). So the entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could and should have been joined in the prior state action.

### 2. Application of entire controversy rule to this case

Certain requirements of the entire controversy rule are surely present. The LT Matter surely proceeded to judgment, and the Detainer Matter seems to have done so. Each involved many of the same transactions that are the subject of this federal action: Ms. Smith's tenancy, the issue of financial responsibility for the physical conditions in the apartment, and her eviction by Hillside. *See Bennun*, 941 F.2d at 163 (3d Cir. 1991) ("a previous state-court action involving the same transaction").

*a. Preclusive effect of the LT Matter*

I first consider the preclusive effect of the State LT Matter.

14

The entire controversy rule's preclusive effect is limited to claims that *could* have been brought in the prior action. Thus, for example, non-"germane" claims, which cannot be asserted in a foreclosure action, will not be barred from being asserted in a later action. See N.J. Ct. R. 4:64-5 (limiting permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure); *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011) (federal-court claims that would have been "germane" to prior mortgage foreclosure action are barred by the foreclosure judgment).

As Ms. Smith sees it, she cannot be barred from asserting her FHA claim in the current federal action, because she was "<u>prohibited</u> by court rule from bringing a counterclaim in the LT Matter." (Def. Brf. 8) When Smith says "prohibited by court rule," she refers to N.J. Ct. R. 6:3-4:

> (a) No Joinder of Actions. Summary actions between landlord and tenant for the recovery of premises shall not be joined with any other cause of action, nor shall a defendant in such proceedings file a counterclaim or third-party complaint.

(Def. Brf. 10) (citing, *e.g.*, *Housing Authority of Morristown v. Little*, 135 N.J. 274, 280, 639 A.2d 286, 289 (1994) ("The only remedy that can be granted in a summary dispossess proceeding is possession; no money damages may be awarded."); *147 Broadway Corp. v. Robinson,* , No. A-6483-06T1, 2008 WL 2663751, at *2 (N.J. Super. Ct. App. Div. July 9, 2008) ("money damages may not be awarded in a summary dispossess action. ... [H]owever, neither a landlord nor tenant are precluded from seeking to recover money damages in a subsequent proceeding")).

Hillside does not really disagree: It acknowledges that "[d]ue to the jurisdictional limitations of the Landlord/Tenant Court in New Jersey, a counterclaim cannot be raised as a matter of law so the relevance of [the] LT Matter to the application of the entire controversy doctrine is limited." (Def. Reply Brf. 1 & n.1) (citing N.J. Ct. R. 6:3-4(a)). By "limited," Hillside means "nonexistent." It quickly concedes that the LT Matter has no preclusive effect,

and that "the only matter relevant to this Motion to Dismiss based on New Jersey's entire controversy doctrine is the unlawful detainer action bearing the Superior Court of New Jersey Law Division, Special Civil Part Docket No. DC-10607-15." (Pl. Reply Brf. 1)

### b. Preclusive effect of the Detainer Matter

Finally, then, I consider the preclusive effect of the Detainer Matter, which is the real source of the parties' disagreement on this motion.

Hillside stresses that in the Detainer Matter, unlike the LT Matter, Smith's counterclaims were not barred; they could have been asserted by leave of court. *See* N.J. Ct. R. 4:67-4. In Hillside's view, that assertion of claims in the prior action required permission does not alter the *res judicata* analysis:

> Thus it was defendants' entire controversy obligation to raise their civil rights, torts and other causes of action by way of a motion for leave to file a counterclaim in the summary action. Concomitantly, it was the trial court's responsibility in ruling upon such a motion, to exercise the substantial discretion it had to manage the entire controversy between the parties, including the entry of an order severing those claims and assigning them appropriately for plenary treatment in other divisions of the Superior Court.

*Perretti v. Ran-Dav's Cty. Kosher, Inc.*, 289 N.J. Super. 618, 624, 674 A.2d 647, 650 (App. Div. 1996). In short, says Hillside, a party should be barred from asserting a claim if it could have sought leave to assert it in the prior action, but did not. Only where the party attempted to assert the claim, and "[w]here . . . the court has expressly reserved the plaintiff's right to maintain the second action or where its rulings on related issues indicate it was likely to have reserved that right, the preclusive effect of the entire controversy does not apply." *DiIorio v. Structural Stone & Brick Co., Inc.*, 368 N.J. Super. 134, 139, 845 A.2d 658, 661 (App. Div. 2004). That, says Hillside, did not happen here.

Ms. Smith stresses, in contrast, that the entire controversy rule is an equitable doctrine. A court must always consider whether applying the rule would "promote any of its objectives, namely, the promotion of conclusive

16

determinations, party fairness, and judicial economy and efficiency." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 70, 800 A.2d 861, 868 (2002). And it must decline to apply the entire controversy rule where "where to do so would be unfair in the totality of the circumstances." *Id.* Relevant equitable circumstances disfavoring preclusion include the following:

> [T]he party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

*Olivieri v. Y.M.F. Carpet, Inc.*, 186 *N.J.* 511, 523, 897 A.2d 1003 (2006).

The Detainer Matter, in contrast with the LT Matter, does not afford Ms. Smith the argument that she was prohibited as a matter of law from asserting counterclaims. Rather, Smith's position here boils down to a contention that she did not have a "*fair and reasonable* opportunity to have *fully* litigated [her FHA] claim in the [Detainer Matter]" under all the circumstances. *K-Land*, 173 N.J. at 72–73, 800 A.2d at 870 (quoting *Gelber v. Zito Partnership*, 147 N.J. 561, 565, 688 A.2d 1044 (1997)) (Emphasis added). I agree.

First, the gist of this federal action is Ms. Smith's demand for possession of the apartment. Claims for possession were not heard in the Detainer Matter. They were relegated to the LT Action, where—as all agree—Smith's counterclaims could not be heard as a matter of law. Moreover, despite Hillside's having failed to prevail in either action, it has not in fact repaired the apartment or restored her tenancy, as contemplated by the Appellate Division's decision. That being the case, Hillside can hardly be heard to claim that she has exhausted her rights and that it is entitled to repose. The harm, despite the state courts' rulings, continues.

Second, Ms. Smith made significant efforts to assert her rights under the FHA in the only context where it mattered: in connection with the LT Action that resulted in her eviction (subsequently overturned on appeal). She directed

Hillside to her rights under the FHAA, sought to consult with Hillside's counsel about them in advance of trial, and proposed a reasonable accommodation consisting of treatment of her disorder and monitoring of the apartment by an outside agency. The Appellate Division decision acknowledges that she attempted to raise the FHAA, at least as a defense if not as a counterclaim, in the LT Action, but was rebuffed.

Third, there was procedural confusion as to the division of issues between the two actions—some of it created by Hillside. Counterclaims may be asserted (by permission) in Detainer proceedings, but Judge Rosa immediately ruled that the Detainer Matter as filed was not an appropriate vehicle for Hillside's claim for possession. Instead, he directed Hillside to file an LT action for eviction. A reasonable litigant could have interpreted that improvised ruling—brought on by Hillside's procedural error—as a ruling that possession issues would not be adjudicated in the Detainer Matter, but had been relegated to the LT Matter, where, everyone agrees, Ms. Smith was prohibited by court rule from bringing a counterclaim.

Indeed, the division of issues between these two kinds of action is usually understood as possession on the one hand, and damages on the other. *See Housing Authority of Morristown,* 135 N.J. at 280; *147 Broadway Corp,* 2008 WL 2663751, at *2. I find it likely that Judge Rosa meant no more than he said—*i.e.,* that he was retaining jurisdiction over the Detainer Matter for purposes of hearing Hillside's claims for damages, and that possession issues would be adjudicated first. A reasonable litigant could have concluded that the Detainer Matter was confined to such damages claims.

Fourth, I find that the order of decision—quick adjudication of Hillside's LT action for possession and eviction, followed by more leisurely adjudication of the Detainer Matter—meant as a practical matter that the possession issue would be settled before Smith ever had the opportunity to assert her possessory rights under the FHAA. On the first day, July 24, 2015, Judge Rosa (who presumably was unaware of Smith's FHAA defense) treated a quick eviction as a *fait accompli.* He assured Hillside's counsel that he would not be

going on vacation in August and "you'll have [Smith] evicted and locked out" *before Smith would even required to file an answer in the Detainer Matter*, which was placed on the slower "CD" track. (Detainer Tr. 16:8–12; 15:16–18) Establishing Hillside's right to possession in the LT Matter before issue was even joined in the Detainer Matter seems to have been the plan from day one.

As it turned out, Judge Rosa was almost as good as his word: he fully tried the LT matter on August 6 and 18, 2015, before Smith filed her Answer in the Detainer Matter on August 22, 2015. The Judge announced his decision in the LT Matter just days later, on August 28, 2015; judgment of possession was formally entered on September 2, 2015 (ECF no. 5-2 at 96); and he amplified his reasoning on September 9, 2015. Of course, no counterclaims are permitted in such summary actions, so an FHAA counterclaim could not have been asserted in the LT Matter. It is very clear, however, that Smith's counsel asserted her rights under the FHAA, in writing, and sought an accommodation of her disability from Hillside's counsel, who declined. In addition, Smith attempted to assert the FHAA as a *defense* in the LT Action; the court excluded it because it would have required introduction of expert testimony, a procedural opportunity which the court regarded as unavailable in a summary action. *See Hillside Village v. Smith*, 2017 WL 412803 at \*6 n.3 (Jan. 31, 2017).

So what opportunity to assert an FHAA claim remained? Hillside believes Smith could have sought leave to assert it in the Detainer Matter, the trial of which lay some fifteen months in the future. At that point, however, the issue of possession had already been decided. That may be a feature, not a bug; a summary LT proceeding prioritizes efficiency in disposing of possession issues, leaving any errors to be redressed by the second-best remedy of damages. And once it has been adjudged that the landlord is entitled to possession, it may make little sense to say that the tenant is now entitled to a separate adjudication of whether *she* is entitled to possession—unless the situation changes and the landlord's entitlement to possession is vacated.

Fifth, circumstances have now changed in precisely that manner. Judge Rosa's judgment for possession in the LT Matter was eventually reversed on

appeal; the trial court, said the Appellate Division, had not even possessed jurisdiction over the case based on the defective Notice to Quit. The possession issue is therefore no longer closed. Now, no presently valid order of any court supports the eviction or entitles Hillside to possession. Yet Hillside has not, as the appellate court admonished it to do, repaired the apartment or resumed the tenancy. 2017 WL 412803 at *6 n.7.[11] So it is difficult to accept Hillside's contention that the matter is simply over and done with.

\* \* \*

This tangled procedural history does not give the Court confidence that Smith had a fair opportunity to present and litigate her FHAA claims. Nor do the circumstances, at least as alleged here, suggest that Hillside is entitled to repose as a matter of equity. Considering the totality of the circumstances, I will exercise my equitable discretion to deny application of the entire controversy rule.

## CONCLUSION

Defendant's motion (ECF no. 5) under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted on grounds of res judicata and the entire controversy doctrine is denied. A separate Order accompanies this Opinion.

Dated: September 11, 2017

_____
KEVIN MCNULTY
United States District Judge

---

[11] It appears from prior decisions in these matters, including the Appellate Division decision, that Hillside has left the apartment unrepaired. It may have done so for the strategic reason suggested by Judge Rosa: that if the local authorities declared the apartment habitable, the tenant might move back in, absent a valid order of the court barring her from doing so.