UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA SMITH,<br><br>      Plaintiff,<br><br>v.<br><br>HILLSIDE VILLAGE,<br><br>      Defendant. | Civ. No. 17-0883 (KM)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

  This motion to dismiss a counterclaim and strike affirmative defenses arises from defendant Hillside Village's aggressive litigation posture with respect to its elderly, disabled tenant of 51 years, plaintiff Sandra Smith. In a prior Opinion ("Op.", ECF no. 10) denying Hillside's motion to dismiss, I summarized the background and procedural history of the case. As I write for the parties, familiarity with that Opinion is assumed.

  Ms. Smith, 78 years old, moved into her rent-controlled apartment at Hillside Village 51 years ago. At some time, she became depressed and developed hoarding disorder, a recognized mental disorder. As a result her apartment became extremely cluttered. Hillside, Ms. Smith's landlord, discovered that conditions in Ms. Smith's apartment had deteriorated to a shocking degree. Ms. Smith was immediately removed from the apartment.

  In July 2015, in state court, Hillside filed an action under the wrong statute, New Jersey's Unlawful Detainer Act. This action was referred to in my prior Opinion as the Detainer Matter (*Hillside Village v. Sandra Smith*, Docket no. DC-10607-15 (N.J. Super. Ct., Law Div., Special Civil Part, Bergen Co).)

1

Hillside initially (and incorrectly) sought eviction of Ms. Smith and possession on three days' notice.

Procedural confusion ensued. Judge Rosa, improvising, directed Hillside to file a landlord-tenant action (the LT Matter), a summary proceeding, in which possession issues would be heard. He dismissed the invalid claim under the Unlawful Detainer statute, but kept the Detainer Matter open for the purpose of later hearing Hillside's claims for damages. Both cases were tried—the LT matter quickly, and the Detainer Matter later. On the LT Matter, Hillside prevailed at trial, but on appeal, the Appellate Division reversed the judgment of possession in Hillside's favor and stated that it "expected" Hillside would repair the apartment and restore Smith's tenancy "promptly." Hillside did not, however, repair the apartment or restore Smith's tenancy. After a trial of damages claims in the Detainer Matter, judgment was entered against Hillside, with prejudice, for failure of proof on the issue of damages.

Smith filed this federal court Complaint, seeking possession of the premises and damages. One claim, under the Fair Housing Act Amendments ("FHA"), is primarily based on Hillside's refusal to accede to Smith's August 2015 proposal for a reasonable accommodation of her mental disability, consisting of mental health treatment and an agreement for monitoring of her apartment by an outside agency. A second claim is based on the New Jersey Law Against Discrimination ("NJLAD").

Hillside's Answer (ECF no. 12) asserts some twenty-eight affirmative defenses. (Affirmative Defenses, ECF no. 12 at 8–12) It also asserts a Counterclaim. The Counterclaim seeks to hold Ms. Smith liable in damages for breach of the Lease Agreement, based on damage to the apartment. It also asserts that Ms. Smith must "indemnify" Hillside for "any and all sums which [Hillside] may be required to [sic] in this action, together with attorneys' fees and costs." (Counterclaim, ECF no. 12 at 12–13)

Smith has filed a motion to dismiss the Counterclaim and to strike Hillside's Affirmative Defenses. (ECF no. 15) Hillside has filed responses (ECF nos. 19, 21), and Smith has filed Replies (ECF nos. 22, 24). For the reasons stated herein, the motion to dismiss the Counterclaim is granted, but the motion to strike Affirmative Defenses is denied.

## I. Motion to Dismiss Counterclaim

### A. *Res judicata* and the claim for breach of the lease

#### 1. Applicable standard

Smith has moved to dismiss the Counterclaim for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

3

678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### 2. Analysis

The Counterclaim seeks damages based on breach of the Lease. Essentially, the claim is that Ms. Smith, by allowing conditions to deteriorate in the apartment, breached the conditions of the Lease and exposed Hillside to the substantial cost of cleaning and repairs. Smith's motion asserts that this claim is barred by *res judicata,* because Hillside pursued a similar claim for damages in the state court Detainer Matter but lost at trial. Hillside responds that the damages claim in the Detainer Matter and the breach-of-lease Counterclaim are "separate causes of action under which the principles of *res judicata* do not apply." (Hillside Brf. 5, ECF no. 21)

#### a. Matters properly considered on 12(b)(6) motion

First, a preliminary issue as to what is properly before the Court on this motion.

Hillside contends that because the basis for a *res judicata* defense does not appear on the face of the Counterclaim, it cannot be the basis of a motion to dismiss under Rule 12(b). It is true that *res judicata,* an affirmative defense, often raises issues of fact. In a proper case, however, it may be cognizable on a motion to dismiss:

> We held in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.

*Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Thus *res judicata* may be considered on a Rule 12(b)(6) motion, where, as here,

4

the necessary facts are "apparent on the face of the face of the complaint" and other documents properly considered on a motion to dismiss.

In support of her motion, Smith attaches and cites to public records, consisting of judicial decisions in the Detainer Action brought against Smith by Hillside:

1) Transcript of Court's oral decision, Jan. 6, 2016 ("Oral Decision"), ECF no. 15-2 at 4;

2) Disposition Form, Jan. 6, 2016 ("Disposition Form"), ECF no. 15-2 at 14;

3) Letter Decision, Jan.28, 2016 ("Letter Decision"), ECF no. 15-2 at 18.

These records reflect the state court's disposition of what, in the prior Opinion, I designated "The Detainer Matter-Phase 2." (Op. 7–8)

While a court considering a Rule 12(b)(6) motion is generally confined to the allegations of the complaint, there are exceptions to that rule:

> "Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

Cited for purposes of *res judicata*, these prior judicial decisions are public records, not cited for any acts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties and

5

the rulings of the state court. Such public records are subject to judicial notice, even on a motion to dismiss:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Hillside's argument is particularly ill-taken given its own motion to dismiss the complaint, asserting *res judicata* with respect to that very Detainer Action. Although I rejected Hillside's motion in a substantial written Opinion (ECF no. 10), I did not do so because I considered *res judicata* to be inappropriate for consideration on a Rule 12(b)(6) motion. On the contrary, I considered the *res judicata* defense at length, but rejected it on the merits and as a matter of equity.[1]

I hold that I may consider the three records, in addition to the face of the Counterclaim, in analyzing Ms. Smith's Rule 12(b)(6) motion.

### b. Basis of the decision in the prior Detainer Matter

Before analyzing the *res judicata* issue, I clarify the nature of the claim that was presented and tried in the prior state Detainer Matter. Although the answer is clear, it requires some explaining, largely because of the procedural havoc sowed by Hillside when it initially sued under the wrong statute.

---

[1] By the way, far from suggesting that a prior judgment could not be considered, I criticized Hillside for asserting that the prior judgment barred Smith's claims, while failing to produce it for the Court's inspection: "In particular, the papers seem to lack a copy of the judgment in the Detainer Matter—the very judgment on which Hillside relies to foreclose the current action." (Op. 7)

6

As outlined in more detail in my prior Opinion, Judge Rosa performed some *ad hoc* surgery on the case. Essentially, he bifurcated Hillside's contentions. The action in ejectment he relegated to a separate LT Matter, which he summarily decided in Hillside's favor (only to be reversed on appeal). The claims for damages he retained within the Detainer Matter, which was placed on a slower track. Eventually the Detainer matter was tried to judgment as a damages case, in what I have deemed "The Detainer Matter-Phase 2." (Op. 7–8)

The Disposition Form, filed by the presiding judge, the Hon. James X. Sattely, J.S.C., on January 6, 2016, reflects the dismissal of the case at trial, with prejudice. (Disposition Form 1) In his contemporaneous Oral Decision, Judge Sattely found that Hillside "ha[d]n't sustained their burden of proof with regard to the damages" and dismissed the case. (Oral Decision 3:12 *et seq.*) Hillside's expert, he found, had not developed a sufficient factual basis for quantifying damages. (*Id.* at 3–4) It is clear from the context that the "damages" at issue consisted of damage to the apartment during Ms. Smith's tenancy. Judge Sattely referred to water damage to the floor beams, the need to remove carpeting and appliances to assess it properly, and the possibility that the "landlord has their own folks go in there to clean out the place." The necessary work to quantify damages, Judge Sattely found, had not been done, and the necessary proofs were therefore lacking. He dismissed the case, which he treated as "a damages only case," with no remaining detainer issues. (Oral Decision 5:5–7).[2]

Three weeks later, Judge Sattely followed up with a Letter Decision on the subject of attorney's fees. That decision confirmed that the Detainer Matter, however designated initially, was tried as a damages case. The case, he wrote,

---

[2] Nothing impeded Hillside's access or prevented it from doing the necessary work in the apartment to assess the cost of repairs. Recall that, as related in my earlier Opinion, Ms. Smith had been removed from the premises long before, in July 2015.

7

"was tried over a two day period ... was concluded on January 6, 2016 and resulted in the dismissal of the plaintiff's case for failure to prove their case for damages against the defendant." (Letter Decision 1)

Hillside conflates its claim for possession, initially brought erroneously under the Unlawful Detainer statute, with its claims for damages, which were bifurcated and later tried within the same Detainer Matter. True, the case had its origin as an action for ejectment under the Unlawful Detainer statute. Judge Rosa, however, immediately dismissed the incorrect Unlawful Detainer Act claim, and, improvising, permitted the damages claim to continue under the Detainer Matter docket number. That damages claim, explicitly retained within the Detainer Matter by Judge Rosa, was later tried under the docket number for the Detainer Matter by Judge Sattely. In January 2016, Judge Sattely clearly stated that he was trying a damages claim, and only a damages claim, brought by Hillside against Ms. Smith based on damage to the apartment, under the docket number for the Detainer Matter.[3] Hillside's

---

[3] Hillside includes in its brief a lengthy quotation intended to demonstrate that Judge Sattely ruled based on the inapplicability of summary dispossession under the Unlawful Detainer statute once a tenant has been in possession for three years. (Brf. p. 5, ECF no. 21) The quotation is taken entirely out of context, to the point of being misleading. It turns out that Hillside's counsel is quoting, not any ruling by Judge Sattely, but an argument made by Smith's counsel at the close of plaintiff's evidence.

The quotation, incidentally, indicates that Smith's counsel, too, was attempting to take advantage of Hillside's initial procedural mistake to argue that the case should never have progressed beyond filing. That approach was rejected. Judge Satteley recognized that, whatever the origins of the case, it was now a damages action by Hillside against Smith.

Judge Satteley preceded the remarks of plaintiff's counsel as follows:

THE COURT: Didn't Judge Rosa address the issue of the detainer action in the related case? Didn't he deny the application?

MR. GUDIN: In this case.

THE COURT: In this particular case.

MR. GUDIN: Yes he did.

MS. METZGER: Yes he did.

(ECF no. 21-1, excerpt from trial transcript at p. 152)

8

current attempt to suggest that it never tried a damages case, but only a Detainer Act case, is the merest sophistry.

### c. *Res judicata* and "separate causes of action"

We arrive at Hillside's legal argument. Hillside contends that *res judicata* does not apply because its current cause of action is not the same cause of action it attempted to pursue in the Detainer Action. That prior action, says Hillside, involved a claim under the Unlawful Detainer Statute. In this action, by contrast, Hillside asserts a claim for breach of the Lease. For the reasons expressed in subsection (b), *supra*, the contrast is not so stark as pictured; both that action and this one involve claims for damages based on damage to the apartment. At any rate, I reject Hillside's attempt to impose a "same cause of action" requirement as a matter of law.[4]

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that State is New Jersey.

---

More colloquy followed, after which Judge Sattely, addressing Smith's counsel, stated no more than "Go ahead, counsel, I'll hear from you." (*Id.*)

After trial, Judge Sattely made his decision. He ruled orally that he was "not going to address the detainer action . . . . I feel this is a damages only case." (Oral Decision 5:5–7)

[4] In its prior motion to dismiss the complaint, Hillside asserted that Smith's claims here were barred by *res judicata*, not because she *had* asserted them in the Detainer Action, but because she could have sought *leave* to assert them, and the state court might have granted it. I accepted that view of the law, although for equitable and other reasons I did not grant the motion. Now, Hillside argues that only particular causes of action actually litigated in the prior action can be barred. Its switch in position is unexplained.

In my prior Opinion, I canvassed New Jersey's entire controversy doctrine, at some length. I will not repeat that discussion, which is incorporated by reference. (*See* Op. 12–14) Suffice it to say here, as I did there, that the particular cause of action as to which preclusion is sought need not have been actually asserted or adjudicated in the prior action. Rather, the necessary relation between the prior action and the present one is a factual, transactional one:

> In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." [citing *DiTrolio v. Antiles*, 142 N.J. 253, 268, 662 A.2d 494 (1995)]. " 'It is the core set of facts that provides the link between distinct claims against the same parties ... and triggers the requirement that they be determined in one proceeding.' " *Id.* at 267–68, 662 A.2d 494. There is no requirement that there be a "commonality of legal issues." *Id.* at 271, 662 A.2d 494.

*Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605, 110 A.3d 19, 27 (2015). So the entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could have been joined in the prior state action.

Setting the entire controversy doctrine aside, New Jersey *res judicata* or claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94, 101 S. Ct. at 414; *Watkins*, 124 N.J. at 412, 591 A.2d at 599 ("Claim preclusion applies

not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.") There is no doubt that the Detainer Matter went to final judgment and involved the same parties. Hillside merely argues that the causes of action in that action and this one are not the same. But here, too, the doctrine does not require that the causes of action in the two actions be identical—only that the suits be based on the same transaction or occurrence.

The Detainer Matter and this one are based on the same underlying matters and facts—the damage to the apartment allegedly caused by Ms. Smith. The causes of action, if not identical, are closely related. The theory of the Detainer Matter has not been clearly articulated, but it was a claim by Hillside against Smith for damage to the apartment. The Counterclaim here asserts the same thing, but identifies the cause of action as breach of the lease. The relation between these cases falls well within what is encompassed by *res judicata,* and especially the entire controversy doctrine. This Counterclaim for damages arising from breach of the lease is therefore precluded.

Finally, and in the alternative, I consider the related *res judicata* doctrine of collateral estoppel, or issue preclusion. New Jersey follows the usual rule that collateral estoppel bars litigation of facts fully litigated and actually determined in a prior action, even one involving a different claim or cause of action. *See Tarus v. Pine Hill,* 189 N.J. 497, 520 (2007). The issue must (1) be identical to the one previously litigated; (2) have been actually litigated; (3) have been asserted in a case that went to judgment on the merits; (4) have been essential to the prior judgment; (5) be asserted against the same party, or one in privity. *See Twp. Of Middletown v. Simon,* 193 N.J. 228, 236 (2008).

(1) The relevant factual issue in the Detainer Matter, identical to one presented by the Counterclaim here, was the proof of damages resulting from Smith's tenancy in the apartment. (2) The issue was actually litigated, and the prior matter (3) went to a final judgment on the merits. The state court, after a

11

trial on the merits, concluded that the proofs of damages were not sufficient and dismissed the case with prejudice. (4) The issue of damages was essential to the prior judgment; indeed it was the very substance of the judgment. (5) The parties—Smith and Hillside—are the same. The doctrine of issue preclusion, then, requires that Hillside be collaterally estopped from litigating the issue of damages in this case. That being an essential element of the claim of breach of the lease,[5] the Counterclaim cannot be sustained.

### B. Hillside's Claim for Indemnification

The second component of Hillside's Counterclaim is unusual. Hillside asserts that, if Smith prevails on her claims for damages against Hillside, then she must immediately repay Hillside in the same amount.

This portion of the Counterclaim, says Hillside, is based on the Rider to the Lease, signed on April 30, 1999. I quote the entire text, which is truncated in Hillside's brief in a way that disguises the context:

---

[5] A lease is a conveyance of an estate in land, and is governed by property law concepts. Where a landlord sues for damages based on breach of a particular covenant in a lease agreement, however, contract principles apply, including the law of damages:

> Under New Jersey law a lease is like any other written contract. When either party fails to perform a covenant, the injured party may bring an action for damages for breach of covenant. The measure of damages is governed by the same principles of contract law applicable to all other kinds of contract breaches.

*Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc.*, 153 N.J. Super. 294, 309, 379 A.2d 508, 516 (Law. Div. 1977), *aff'd*, 166 N.J. Super. 36, 398 A.2d 1315 (App. Div. 1979).

Thus, in *Crescent Trading, LLC v. Chera*, the landlord sued for damages based on the tenant's failure to fulfill a lease covenant to obtain necessary approvals to open a franchise. The Appellate Division analyzed this as a contract claim:

> To sustain a claim for breach of contract, a party must show the existence of a contract, failure of the other party to perform its contractual obligations, and damages flowing from the breach. . . . ; *see also Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 10-11, 647 A.2d 454 (1994) (breach-of-contract claims require proof of damages).

*Crescent Trading, LLC v. Chera*, No. A-3281-07T3, 2010 WL 3932892, at *7 (N.J. Super. Ct. App. Div. Oct. 4, 2010) (citations omitted).

## Rider

In compliance with P.L. 1974, Chapter 48 (C.46:8-36 *et seq.*), Tenant is advised that Renters Insurance is available for purchase by the Tenant at an affordable cost. Tenant may make application for such insurance from Tenant's own insurance agent or directly from New Jersey's designated Servicing Company. Tenant's Insurance agent can advise Tenant of what company that is at present.

Such insurance policy available at an affordable cost, will protect Tenant against loss, and Tenant is therefore recommended to obtain such Renter's Insurance. Tenant agrees that Landlord, Hillside Village, and its employees shall not be liable for any loss or damage arising out of or connected with the rental of the premises known as 604-A Bruce Street.

The undersigned Tenant(s) hereby do(es) releases and discharge, indemnify and hold harmless Hillside Village, from any and all claims which Tenant, Tenant's family and/or Tenant's guests may have for damages, including but not limited to, theft, vandalism, Acts of God, personal injury and theft or damage to personal property, while in the building or on the grounds, arising out of or connected with or incidental to the rental of said apartment, and Tenant agrees to look solely to Tenant's insurance carrier for restitution, and not to Hillside Village, except in cases of gross negligence on the part of the Landlord. The undersigned Tenant(s) hereby do(es) release and discharge, indemnify and hold harmless Hillside Village, from any and all claims which Tenant, Tenant's family and/or Tenant's guests may have for damages.

(ECF no. 21-2 at 7)

First, I consider the ordinary meaning of "indemnity." Ordinarily, it is an undertaking by A to reimburse B for its liability to C. *See generally Fengya v. Fengya*, 156 N.J. Super. 340, 345, 383 A.2d 1170, 1173 (App. Div. 1978) (in "a contract of indemnity . . . the promisor undertakes to protect the promisee against loss or liability to a third person"). The quintessential example is a policy of insurance.

13

"Indemnity" is not ordinarily understood as an agreement that if C successfully sues B for damages, C must immediately pay back an identical amount to B. Such a two-party "rebound" provision is more properly considered an exculpatory clause.

Second, I consider the enforceability of such exculpatory provisions. They are not favored at law. *See Kuzmiak v. Brookchester, Inc.*, 33 N.J. Super. 575, 111 A.2d 425 (App. Div. 1955)(lease provision exculpating landlord from liability to tenant for injuries caused by landlord's own negligence held void as against public policy). Indeed, even a third-party contract of indemnity will not be interpreted to cover the indemnitee's own negligence absent a clear and explicit statement to that effect. *Azurak v. Corp. Prop. Inv'rs*, 175 N.J. 110, 111, 814 A.2d 600, 600 (2003). That *Azurak* rule has been applied to deny enforcement of a lease provision purporting to exculpate a landlord from injury to a tenant caused by the landlord's own negligence. *Diaz v. M & M Louie Holdings, LLC*, No. A-0639-09T2, 2010 WL 2867947, at *10 (N.J. Super. Ct. App. Div. July 20, 2010) (indemnification clause "for any cause or reason whatsoever arising out of or by reason of the occupancy by the Tenant and the conduct of the Tenant's business" does not satisfy *Azurak* rule). For these reasons, I do not believe that the "indemnity" of the Rider is enforceable where the tenant is suing the landlord based on the landlord's own fault.

Third, I consider the public policy implications as to a landlord's exculpating itself, not merely for its own negligence, but for its violation of a tenant's statutory rights. Here, Ms. Smith asserts claims under the federal FHA, as well as the NJLAD. Those statutes impose duties of accommodation and nondiscrimination as to handicaps. *See* 42 U.S.C. § 3604(f); N.J. Stat. Ann. §§ 10:5-4, 10:5-4.1. Provisions purporting to exculpate a party from violation of a statutory duty are particularly disfavored, and will be struck down as contrary to public policy. *See, e.g., Hojnowski v. Vans Skate Park*, 187 N.J. 323, 333, 901 A.2d 381, 395 (2005); *Stelluti v. Casapenn Enters., LLC*, 203 N.J. 286, 303, 1 A.3d 678, 689 (2010) (it is "contrary to the public interest to

sanction the contracting-away of a statutorily imposed duty"). So too here. The "indemnity" of the Rider is not enforceable where the tenant is suing the landlord based on the landlord's violation of the tenant's statutory rights under the FHA and the NJLAD.[6]

Fourth, and in the alternative, I consider Hillside's interpretation of the language of the Rider. The full quotation suggests that Hillside's interpretation is not plausible. The Rider is primarily a legally required notice that the tenant should acquire renter's insurance, and a warning as to the consequences of not doing so. The subject matter of the third paragraph concerns claims as between the tenant and others; it warns the tenant that the landlord will not stand in the shoes of the tenant's insurer.

I do not read this as a statement that the landlord may harm the tenant at will, without consequence. I read it as a statement that the landlord will not be held responsible for claims by and between the tenant and third parties. But this is, as I say, an alternative ground for the decision as a matter of law stated above.

For all of these reasons, then, I grant the motion to dismiss the second, indemnity component of the Counterclaim.

---

6 Analogizing to cases rejecting claims for third-party indemnity as to FHA liability, Smith suggests that the issue has a preemption aspect:

> [T]he Court agrees with those federal courts to have addressed this issue that the FHA and the ADA preempt state law claims for both indemnity and contribution. *See, e.g., Miami Vall. Fair Hous. Ctr., Inc. v. Campus Vill. Wright State, LLC*, No. 3:10-00230, 2012 WL 4473236, at *7 (S.D. Ohio Sept. 26, 2012) [U.S. Magistrate Judge opinion]; *United States v. Murphy Dev., LLC*, No. 3:08-0960, 2009 WL 3614829, at *2 (M.D. Tenn. Oct. 27, 2009).

*United States v. Dawn Properties, Inc.*, 64 F. Supp. 3d 955, 960 (S.D. Miss. 2014). That narrow preemption issue is not central to this motion.

15

## II. Motion to Strike Affirmative Defenses

Finally, Smith has moved to strike about half of the twenty-eight affirmative defenses pled in Hillside's Answer—in particular, numbers 1, 3, 4, 7, 11, 12, 13, 15, 16, 17, 20, 23, 24, 26, and 27. Smith cites Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") I agree with Smith that this laundry list of defenses may be regarded as boilerplate. Still, defenses (which need not meet *Twombly/Iqbal* pleading standards) are commonly pled with an eye to avoiding a claim of waiver later on. The issues will be refined and framed as the matter proceeds through discovery, to a potential motion for summary judgment, and certainly in the process of developing a pretrial order. It is therefore not the practice of this Court to tarry unnecessarily over matters of pleading.

Rule 12(f) is discretionary (the court "may"). I will exercise that discretion to bypass wrangling over the phrasing of the pleadings and get to the merits. The motion to strike is denied.

## CONCLUSION

Plaintiff Smith's motion (ECF no. 15) is granted insofar as it seeks dismissal of Hillside's Counterclaim; it is denied insofar as it seeks to strike Hillside's Affirmative Defenses. A separate Order accompanies this Opinion.

Dated: January 26, 2018

_____
KEVIN MCNULTY
United States District Judge